# Charleston.

The Western M. & M. Co. *et. al. v.* The Virginia Cannel Coal Co. *et. al.*

Decided May 1st, 1877.

1877.
January Term.

1. A fact which has been directly tried and decided by a court of competent jurisdiction, cannot be contested again between the same parties in the same, or any other court. It is *res judicata.*

2. But to make it *res judicata*, it must have been *directly*, and not *collaterally*, in issue in the former suit, and there decided.

3. It makes no difference whether the fact has been decided in a court of law or chancery, provided the court had jurisdiction thereof; and the decree or judgment may be pleaded as an estoppel either in a law or chancery court.

4. It is not necessary that precisely the same parties were plaintiffs and defendants in the two suits; provided the same subject in controversy, between two or more of the parties, plaintiffs and defendants to the two suits respectively, has been in the former suit directly in issue, and decided.

5. Where a decision of a former suit is pleaded as an estoppel, so much of the former record must be set out, or made part of the pleading, as will show that the precise question has been adjudicated in the former suit.

6. Where a court of chancery has jurisdiction for one purpose, it will not send the parties to a court of law, but will retain the jurisdiction for all purposes, and do complete justice between the parties.

7. The questions, of ownership, and right to the possessor of the interlock under the title derived from Wm. M. Peyton, and all questions of controversy as to the interlock between the parties to this injunction suit under said title, and in-

volved therein, are settled and adjudicated, in the suit in chancery between substantially the same parties decided in 8 W. Va. 412.

8. If an amended bill is tendered and the court below refuses to allow the same to be filed, if upon an inspection of the whole record, the appellate court sees that if it had been filed, it could not have affected the merits of the case, and that the party tendering it was not prejudiced by the refusal of the court to allow it to be filed, under such circumstances the refusal of the court below to allow the amended bill to be filed is no ground for reversing the decree of the said court.

9. Under section 12 of chapter 125 of the Code, the plaintiff may amend his bill at any time after the appearance of the defendant, if substantial justice will be promoted thereby; but the Judge of the court below, is clothed with discretion to say " where substantial justice will be promoted thereby," and unless the record shows, that the court erred in exercising that discretion, the decree denying the right to amend, will not be reversed.

10. Where new matter has arisen since the filing of the original bill, such new matter can only be introduced into the case, by a supplemental bill.

11. A bill of injunction is fatally defective which does not aver good title in the plaintiff, contains no charge of insolvency against the defendants, does not show that irreparable damage will result if the injunction is denied, and prays an injunction to restrain a naked trespass upon real property.

This is an appeal granted upon the petition of the Western Mining and Manufacturing Company and their successors, the Philadelphia Cannel Coal Company, to a decree rendered by the circuit court of Kanawha county, on the 23d day of December, 1875, in a chancery cause in which said Western Mining and Manufacturing Company were plaintiffs, and the Virginia Cannel Coal Company and others were defendants, dissolving an injunction granted in favor of the plaintiffs by Judge H. J. Samuels on the 10th day of May, 1866, and refusing to allow the plaintiffs to file an amended bill of injunction, and declaring that the rights of the parties to the land in controversy had been finally adjudicated, settled and determined, by a decree of the Supreme Court

1877.
January Term.

Western M & M.
Co.  et al.
v.
Virginia Cannel
Coal Co. et al.
of Appeals, rendered on 4th March, 1875, in a chancery cause in which the said Western Mining and Manufacturing Company were plaintiffs, and the said Virginia Cannel Coal Company and others were defendants. A full report of which cause, containing a map of the lands in question, will be found in 8 W. Va., 406.

Hon. Joseph Smith, Judge of the seventh judicial circuit, rendered the decree appealed from.

JOHNSON, JUDGE, who delivered the opinion of the Court, prepared the following statement of the case:

In 1866, the Western Mining and Manufacturing Company filed its bill in the circuit court of Boone county, the principal allegations of which were:

*First.* That on the 31st day of March, 1851, Wm. M. Peyton and wife, by proper deed of record, in Boone county, conveyed to the Virginia Cannel Coal Company 6,123 acres of land on Big Coal river, in Boone county, by specified metes and bounds.

*Second.* That afterwards, on the 6th day of January, 1857, the said Peyton and wife, by deed of record, conveyed to Edwin Mitchell and Jesse E. Peyton, by certain defined metes and bounds, six several tracts of land, adjoining each other, situated on Droddy's creek, a branch of Coal river, and also adjoining the 6,123 acres conveyed by Peyton to the Virginia Cannel Coal Company.

*Third.* That those six tracts of land were, on the 7th day of October, 1857, conveyed by Mitchell and J. E. Peyton to the plaintiffs, The Western Mining and Manufacturing Company.

*Fourth.* That a survey of the lands embraced in the deed to the Virginia Cannel Coal Company showed that the true quantity thereof was 7,510 acres, instead of 6,123 acres, being an excess of 1,387 acres over and above the quantity intended to be sold to said company by Wm. M. Peyton.

*Fifth.* That a like survey showed that there was a deficiency of 1,300 acres in the lands sold by Peyton to Mitchell and Peyton, and by them to the plaintiffs.

*Sixth.* That said surveys also show that the excess in one, and the deficiency in the other, was caused by the said Wm. M. Peyton having conveyed parts of the same lands to both of said companies, causing an *interlock*, which is now the subject of mutual claim and dispute.

*Seventh.* That to correct this, proceedings were instituted prior to 1861 on the law side, and provision made in the arbitration agreement, for instituting the same on the equity side of the court, and the question afterwards submitted to arbitration, by written agreement of the parties.

*Eighth.* That during the rebellion the papers of the case on the law side of the court were lost.

*Ninth.* That the plaintiff was preparing *again* to institute proceedings on the equity side of the court against the Virginia Cannel Coal Company, as provided for in the arbitration bond, to bring the conflicting interests of the two companies, within the interlock, to a final adjustment.

*Tenth.* That owing to the events of the last five years, the questions referred to the arbitrators have not been settled, and are still the subject of dispute.

*Eleventh.* That the Virginia Cannel Coal Company are proceeding to cut down and carry off large quantities of timber within the interlock, valuable to the complainants, in any future operations of their coal mines.

*Twelfth.* That the complainants will complain, and hope to show, that the calls in the deed from William M. Peyton and wife to the Virginia Cannel Coal Company, which make the interlock, were mistaken calls, and that the lands within the interlock properly passed under the deed from Wm. M. Peyton and wife to Jesse E. Peyton and Edwin Mitchell.

The prayer of the bill is, that the Virginia Cannel Coal Company, its agents, &c., be inhibited and enjoined

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

from cutting, removing, and carrying away, timber from the land within the interlock, until the further order of the court, and until the rights of the companies are properly adjudicated. An injunction was granted as prayed for in the bill.

The cause was removed to the circuit court of Kanawha county, and nothing more done therein until the 6th day of November, 1875, when the defendants tendered their answer, and moved to dissolve the injunction. In their answer they also prayed for affirmative relief.

The answer is in substance as follows:

*First,* It admits that Wm. M. Peyton, on the 31st day of March, 1851, conveyed to the Virginia Cannel Coal Company, 6,123 acres of land by metes and bounds.

*Second,* It admits that said Peyton afterward in the year 1854, conveyed to Jesse E. Peyton and Edwin Mitchell, a portion of the lands previously conveyed to the Virginia Cannel Coal Company, thereby creating the interlock mentioned in the bill.

*Third,* It admits that Peyton and Mitchell afterwards, conveyed the same lands to the Western Mining and Manufacturing Company; but denies that any title passed by any of said deeds, either to the said Peyton and Mitchell, or to the plaintiffs, to any portion of the said interlock, except to the Tetham Snodgrass land.

*Fourth,* It admits that the Virginia Cannel Coal Company and others commenced an ejectment suit, against the Western Mining and Manufacturing Company and others, for the recovery of the said interlock; the said company and the other defendants, in said action, having entered upon a portion of said interlock; also admits that the matters in dispute in said action were submitted to arbitration.

*Fifth,* It admits that during the war, most of the papers in said action of ejectment were destroyed.

*Seventh,* It admits that the Virginia Cannel Coal Company entered on said interlock, and cut and removed timber therefrom, in the year 1866, as the company had

a right to do, under and by virtue of its deed from Peyton of the 31st of March, 1851.

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

*Eighth,* It denies each and every allegation in the bill, which directly, or indirectly alleges, that there was any mistake in the lines, or any of them, set out in the deed from Peyton to the Virginia Cannel Coal Company; and on the contrary it, avers, that the said lines and each of them, set out in said deed, were the true and correct lines of the land conveyed, and intended to be conveyed by said Peyton, to said company, and that there was no mistake or error in said deed, and especially denied that there was any mistake in the line south 34°, west 1,030 poles, as set out therein.

The matters set up, and upon which affirmative relief is prayed for in the answers are, as follows:

*First,* That a few days after the filing of the said (injunction) bill, the said plaintiffs, The Western Mining and Manufacturing Company, commenced a suit in chancery against the Virginia Cannel Coal Company and others, in the circuit court of Boone county, the principal object of which was to correct an alleged mistake, in said deed, of said Peyton, to said Virginia Cannel Coal Company, of the 31st of March, 1851, which was the same supposed mistake, which is alleged in the bill in this case.

*Second,* That the mistake alleged in the said bill was denied by the defendants, and a great mass of testimony was taken by both parties in support of their respective positions.

*Third,* That on the 8th day of November, 1867, all the parties in interest being before the court, the suit in chancery, came on to be heard by the circuit court of Boone county, and by said court, among other things, it was decreed by said court that, the line south 34° west 1,030 poles, was the true course and line of said land, so conveyed by said deed, as understood by Peyton at the time of the execution of the deed, that no mistake was made in said deed.

1877.
January Term.

Western M. & M.
Co. et al.
v.
Virginia Cannel
Coal Co. et al.

*Fourth.* That afterward, by consent of parties, the cause was removed to the circuit court of Kanawha county.

*Fifth.* That in the circuit court of Kanawha county, such proceedings were had, that the decree of the circuit court of Boone county was opened, and a rehearing of the case had. That a large mass of additional testimony was taken by the parties, and additional pleadings made up, and the cause brought to a final hearing on the 14th day of May, 1872, on which hearing it was, in substance and effect, adjudged, ordered and decreed that the said course and line, south 34°, west 1,030 poles, was the true course and line of the lands conveyed, and intended to be conveyed by the said Peyton to the Virginia Cannel Coal Company, by the said deed of 31st March, 1851, and that there was no mistake in said course and line, as alleged in the bill, and that the bill, and all the other bills in the case, be dismissed, with costs to the defendants, which was accordingly done.

The large printed record of over 700 pages, containing all the proceedings of the said chancery suit, is made an exhibit with the answer.

*Sixth.* That said plaintiff, the Western Mining and Manufacturing Company, appealed from said decree to the Supreme Court of Appeals, which Court affirmed the decree appealed from.

*Seventh.* That said interlock is made up of lands purchased by said Peyton of Rachel Williams, Benjamin Burnside, and Tetham Snodgrass, those purchased from Williams and Burnside having been conveyed to him by them just before the date of his deed to the Virginia Cannel Coal Company, but the part purchased from said Snodgrass was not conveyed to him until after the date of the deed of March 31, 1851.

*Eighth.* That the Court of Appeals, in its decision, among other things, held and decided that by the deed of Peyton of March 31, 1851, all the right, title and interest which the said Wm. M. Peyton then had in the

1877.
January Term.

Western M. &
M. Co. *t al.
v.
Virginia Cannel
Coal Co. et al.

interlock passed to, and vested in, the Virginia Cannel Coal Company, but inasmuch as he did not have title to a small portion of the interlock, (about 100 acres,) at the time of said conveyance, to-wit: that portion purchased from said Tetham Snodgrass, the title to so much of the said interlock as was made up of the Snodgrass land did not pass to the Virginia Cannel Coal Company by said deed.

*Ninth,* That in accordance with the decision of the Court of Appeals, the defendants abandon all claim to that portion of the interlock which is composed of the Tetham Snodgrass land.

*Tenth,* That the said Peytona Cannel Coal Company is engaged in large and expensive mining operations on the residue of the property of which this interlock is a part; that they and their predecessor, the Virginia Cannel Coal Company, have made various expensive coal openings in the said coal property, up to the line of this interlock, at which point they have been compelled to stop, and wait for the termination of this suit; which mining operations commenced in 1851, and have continued ever since, with the exception of the period of the war.

The prayer of the bill is:

*First,* That the injunction be dissolved.

*Second,* That the Peytona Cannel Coal Company may be quieted in the possession of all their said land within the interlock, to which their title has been confirmed by the Court of Appeals. That a writ of possession may be awarded to the Peytona Cannel Coal Company, to remove the Western Mining and Manufacturing Company, the Philadelphia Cannel Coal Company, and all others claiming under them, from said lands of the Peytona Cannel Coal Company within said interlock.

*Third,* That defendants pray for general relief.

To the answer, the plaintiffs filed a special replication, the substance of which is as follows:

32

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

*First,* It admits the institution of the ejectment suit in January, 1860.

*Second,* That both companies at that time claimed the land in the interlock, by virtue of the several conveyances from Wm. Peyton.

*Third,* It admits the loss of part of the papers in the ejectment suit during the war.

*Fourth,* It denies that the ejectment suit was ever at any time since the war, on the docket of Boone circuit court, and avers that the first order made in said ejectment suit after the year 1861, was an order made in 1871, whereby it, with several other suits between the same parties, was transferred to the circuit court of Kanawha county.

*Fifth,* That in the year 1860, a survey and report were made, in the said ejectment suit, by John L. Cole, surveyor; that copies of said report and survey, are now on file in the said ejectment suit; that by said survey and report, the said Virginia Cannal Coal Company claimed the western boundary of their land in 1860, to be represented by the straight line A B, the letter A representing the point on the ridge line at the patch of rocks, and the letter B representing another point on the said ridge line, situated at the end of the said straight line A B, on the said map of John L. Cole.

*Sixth,* That by the deed executed by Wm. M. Peyton, on the 12th of December, 1854, the eastern boundary of their land was the ridge line A B as laid down on the map of John L. Cole, thereby the land included within the straight line A B and the ridge line A B on the said map, was in 1860, claimed by both complainants and defendants, and is the land in controversy in the ejectment suit.

*Seventh,* That in 1860, the repliants took the depositions of various witnesses in the ejectment suit.

*Eighth,* That in May 1866, and subsequent to the injunction suit, they instituted a suit in equity against the Virginia Cannel Coal Company, and others, alleging

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

that there was a mistake, in the calls of the deed, for six thousand one hundred and twenty-three acres of land, executed by Wm. M. Peyton, on the 31st of March, 1851, to the Virginia Cannel Coal Company; and that said Wm. M. Peyton sold the six thousand one hundred and twenty-three acres, by the dividing ridge line, represented by A B on Cole's map, and not by the straight line on said map, and prayed the court to correct the said deed, of March 31, 1851, so as to make the calls of the deed correspond with the contract of purchase made by said Virginia Cannel Coal Company with Wm. M. Peyton.

*Ninth*, It denies the averment contained in the answer, that the said suit in equity was brought to settle all the conflicting claims of the complainants and defendants to the interlock; but on the contrary, the questions embraced in the ejectment suit were very different from the questions embraced in the chancery suit, and were not embraced therein. That the only object of the last mentioned suit, was to correct certain alleged mistakes, in the courses and distances, of the deed executed by Wm. M. Peyton, to the Virginia Cannel Coal Company, dated 31st March, 1851.

*Tenth*, It admits that the said bill in equity was dismissed at their costs, and that the decree of dismissal was affirmed by the Supreme Court of Appeals.

*Eleventh*, It avers that the question, " Who has the better title to the said interlock ?" is yet to be determined by the ejectment suit aforesaid.

*Twelfth*, That repliants are advised and so aver, that it is not the province of a court of equity to pass on land titles; that the question of title in controversy is purely a legal question, and must be settled by an action of ejectment, such as is now pending between plaintiffs and defendants.

*Thirteenth.* That the Virginia Cannel Coal Company and their successors, the Peytona Cannel Coal Company, never had possession of any part of the said inter-

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.
lock, nor did they, or either of them, ever exercise any acts of ownership or authority, over the said interlock, or any part thereof, from the date of the deed, March 31, 1851, from Peyton to the Virginia Cannel Coal Company, down to the present time, saving and excepting the cutting of timber for a few days in 1866, as acts of trespass by the Virginia Cannel Coal Company and its agents, during the absence of the agent of the Western Mining and Manufacturing Company from the State, which cutting was immediately stopped by the injunction in this suit.

*Fourteenth,* That the action of ejectment can be tried at the present term of this Court, and that the injunction should remain in force until the ejectment is tried.

*Fifteenth,* That the said interlock is laid down on the map and survey made in 1867, by A. P. Sinnett in the chancery suit, as situated between the straight line A F and the dividing ridge line A F, and that the said interlock is laid down on the map and survey made in 1860, by John L. Cole, in the ejectment suit as situated between the straight line A B and the dividing ridge line A B.

*Sixteenth,* That the interlock is composed of parts of the Benjamin Burnside tract, of the Tetham Snodgrass tract, and the Rachel Williams tract, all of which formerly belonged to Wm. M. Peyton.

*Seventeenth,* That the defendants must have obtained a decree or judgment for the recovery of the interlock before they are entitled to a writ of possession, and that the decree of the Supreme Court of Appeals dismissing bill of complainants, has no such effect, as the defendants are now claiming.

*Eighteenth,* That the said defendants are not entitled to the said writ, or any such writ, whereby they could get possession of the said interlock, by virtue of the decree rendered in the chancery suit aforesaid, which was instituted solely to correct alleged mistakes in the boundaries of a deed.

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

*Nineteenth,* That in the decree rendered by the Supreme Court of Appeals in the said chancery suit, a principle of law was enunciated whereby the title of the Western Mining and Manufacturing Company to the Snodgrass land in the interlock, was held to be superior to the title of the Virginia Cannel Coal Company to the same land.

*Twentieth,* That the Supreme Court of Appeals define accurately what were the boundaries of the lands embraced in the deed executed by the said Wm. M. Peyton to the Virginia Cannel Coal Company on the 31st of March, 1851, which boundaries, as defined by the court, were different from those claimed by the complainants, and by the defendants also, in said chancery suit.

*Twenty-first,* That the Snodgrass land is that portion of the interlock which separates the Burneside land from the Rachel Williams land, and that the boundaries of the said Snodgrass land have been recently ascertained by a survey of the same.

*Twenty-second,* That a trial of the ejectment suit is necessary to determine which of the said parties, complainants or defendants, have the better title to the land embraced in the said interlock.

*Twenty-third,* Denies that the injunction was improvidently awarded, and avers that it should continue and remain in full force until the ejectment suit is tried and a final judgment rendered therein.

*Twenty-fourth,* Denies each and all the grounds upon which relief is prayed for in the answer, and asserts the right of repliants to the interlock by virtue of their deed, and their long-continued possession thereof.

*Twenty-fifth,* It insists that the action of the Peytona Cannel Coal Company, successor of the Virginia Cannel Coal Company, in executing a mortgage on their lands for $300,000, on the 12th day of April, 1869, makes it the more incumbent on the court to inhibit and restrain the said Peytona Cannel Coal Company from cutting timber, mining coal, &c., on any part of the said inter-

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

lock, as prayed for in said injunction, until the eject-
ment suit is tried and disposed of.

*Twenty-sixth*, That the lands of the said Peytona Can-
nel Coal Company are not worth the amount of the said
mortgage, and that repliants would be remediless in a
court of law, for the value of any coal and timber here-
after taken from the said interlock by the Peytona
Cannel Coal Company, should the ejectment suit be de-
cided in favor of repliants.

*Twenty-seventh*, That the report and survey of John
L. Cole, in the ejectment suit made last month, showed
that neither plaintiffs nor defendants owned certain parts
of the land embraced in the boundaries of the deed from
Wm. M. Peyton to the Virginia Cannel Coal Company, as
defined by the Court of Appeals; and that Jonathan
Douglass and Benjamin Burneside are the owners of a
portion of the land known as the interlock.

*Twenty-eighth*, That their original bill of injunction
may remain *in statu quo* until the ejectment suit is tried
and finally disposed of.

The answer and special replication were filed on the
17th day of November, 1875.

On the 20th day of December, 1875, the complainants
tendered an amended bill in the cause, to the filing of
which the defendants objected.

The material allegations and charges in the amended
bill so tendered, are:

*First*, That, by way of amendment to the original
bill of injunction obtained by the Western Mining and
Manufacturing Company against the Virginia Cannel
Coal Company and others, on the 10th day of May,
1866, from the Hon H. J. Samuels, then Judge of the
Boone circuit court, your orators, the said Western Min-
ing and Manufacturing Company, and their successors,
the Philadelphia Cannel Coal Company, represent that
the land in litigation between the aforesaid companies is
designated the interlock, and contains one thousand
one hundred and ninety-eight and one-half acres, ac-

cording to the report and survey of A. P. Sinnett; that
exclusive of the said interlock, the Virginia Cannel Coal
Company have, by the report of A. P. Sinnett, six thou-
sand and ninety-three acres of land, conveyed by the
deed of Wm. M. Peyton, dated March 31, 1851, being
ninety-three acres of land more than the Virginia Can-
nel Coal Company purchased and paid for.

*Second,* That complainants have had the exclusive
possession of said interlock for the past twenty-one
years; that they took possession of said interlock in
1854, and by and with the consent, knowledge and ac-
quiesence of the Virginia Cannel Coal Company, the said
Western Mining and Manufacturing Company cut tim-
ber, mined coal, erected miners' houses, occupied the
same, made coal openings, constructed coal chutes, and
exercised other notorious acts of ownership and author-
ity over the said interlock, from 1854 to July, 1861.

*Third,* That their railroad from Coal river up Drod-
dy's creek to the cannel coal banks, within the interlock,
was located for them in 1855, by Clement Smith, the
agent of the Virginia Cannel Coal Company, and this
under a special order of the board of directors of the
Virginia Cannel Coal Company, on the 26th July, 1854.
See page two hundred and twenty of the printed record,
filed in this suit by the Peytona Cannel Coal Company.

*Fourth,* That over this railroad, in the years 1856,
1857, 1858, 1859, 1860 and 1861, they transported sev-
eral millions bushels of coal from said interlock, which
was well known by the stockholders, agents, officers and
employes of the Virginia Cannel Coal Company, and
acquiesced in by them.

*Fifth,* That the value of said interlock consists en-
tirely of the timber thereon and coal deposits therein;
that its special value is the cannel coal contained therein;
that this interlock constitutes about one-third of the
land acquired by them from William M. Peyton, through
Edwin Mitchell and Jesse E. Peyton; that without the
interlock, their property is comparatively valueless;

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

1877.
January Term.

Western M. &
M. Co. *et el.*
v.
Virginia Cannel
Coal Co. *et al.*

that it was the cannel coal deposits within the interlock which induced them, in 1854, to purchase the land and expend over $150,000 to develop it.

*Sixth,* That irreparable injury will be done to the said interlock, if the Peytona Cannel Coal Company be permitted to cut and take timber, to mine and remove coal from the said interlock; and that irreparable injury will be done to the residue of the said land, acquired by your orators, if the injunction now pending be dissolved, and the Peytona Cannel Coal Company be permitted to cut timber and remove cannel coal from the interlock.

*Seventh,* That since their original bill of injunction was filed, the lands and property of the Virginia Cannel Coal Company and the Peytona Cannel Coal Company have been mortgaged for more than double their value; that the said mortgage debt is, at this time, about $400,-000, whilst the lands of the Peytona Cannel Coal Company are not worth over $200,000; that the said Peytona Cannel Coal Company will not be able to pay off and discharge any judgment that may hereafter be obtained against them by your orator, for coal and timber taken from the interlock; that, in fact, any mining of coal on the interlock by the said Peytona Cannel Coal Company would result in an entire loss to your orators, should they succeed in the ejectment suit aforesaid.

*Eighth,* That the Peytona Cannel Coal Company have land situated near their railroad, on Old House run, containing cannel coal, which is much more accessible and convenient for mining than the interlock land is to them.

*Ninth,* That the deposition of H. W. Godwin, chief agent of the Peytona Cannel Coal Company, shows that the mining, transporting and selling of cannel coal taken from the lands on Old House run, by the Peytona Cannel Coal Company, have, so far, proven unprofitable to said company, and that it is not, therefore, injured by being inhibited and enjoined from cutting timber and mining and removing coal from the interlock, until the ejectment suit is tried.

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

*Tenth,* That complainants are advised, and so aver, that the decision of the Supreme Court of Appeals defined and settled the boundary lines of the land embraced in the deed from William M. Peyton to the Virginia Cannel Coal Company, but did not settle and determine the right of property or the right of possession to the interlock.

*Eleventh,* That neither the Virginia Cannel Coal Company, nor their successors, the Peytona Cannel Coal Company, ever had possession, either actual or constructive, of said interlock, but that complainants, have tenants on said interlock, and have had for the past twenty-one years and that their use, occupation and possession thereof, has been exclusive.

*Twelfth,* That complainants are advised and charge, that the use and occupation of a portion of an interlock by the junior grantee, to the exclusion of the senior grantee from the entire interlock, operates in law as the possession of the entire interlock by the junior grantee.

*Thirteenth,* That the Virginia Cannel Coal Company, held out inducements from time to time, from 1854 to 1860 inclusive, to complainants to embark with them in locking and damming Coal river, whereby the two companies could transport cannel coal from their respective properties, the summit line of the dividing ridge A B on Sinnett's map being agreed upon, and recognized as the common boundary between the said companies.

*Fourteenth,* That not until 1859, did the Virginia Cannel Coal Company make any demand of your orators, or set up any claim, to the interlock, and even then they agreed and consented that the Western Mining and Manufacturing Company, should continue mining and transporting coal from the interlock, which they did until stopped by the civil war, in July 1861.

*Fifteenth,* That the Virginia Cannel Coal Company in 1865, positively refused to submit to the terms of arbitration that had been agreed upon, in February 1860, and declined to take any further action upon the agree-

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

ment for said arbitration, but concluded to take possession of the interlock, *vi et armis*, in the spring of 1866. This action on their part was promptly met by the order of injunction aforesaid.

*Sixteenth,* That neither the Virginia Cannel Coal Company, nor the Peytona Cannel Coal Company, have paid any taxes on said interlock, but the taxes thereon have been regulary paid for the past twenty-one years by complainants.

*Seventeenth,* That for the past thirteen years they have been anxious to resume their mining operations on their lands on Droddy's creek, but have been prevented from doing so by the claim set up by the Virginia Cannel Coal Company, to that portion of said land known as the interlock.

*Eighteenth,* That they have over and over again since 1865, offered to the Virginia Cannel Coal Company, and their successors, propositions to arbitrate all questions in litigation between them, and have offered propositions of compromise, but each and all said propositions have been rejected ; and had any one of them been accepted, this litigation would have ended years ago. Now, however, with a mortgage exceeding the value of all their property, the Peytona Cannel Coal Company are clamorous to get upon the interlock, and destroy the value thereof, by mining cannel coal therefrom.

*Nineteenth,* That the chief value of their improvements consists of a stone dwelling house, and store house, mill, miners' houses, graded railroad track, &c., &c:, and also the chief value of their land not in dispute depend upon their owning the interlock, and that whatever cannel coal should be taken by the Peytona Cannel Coal Company, from the interlock, so far materially damages complainants' property, lying outside and adjacent to the interlock.

*Twentieth,* That it was the cannel coal deposits in the interlock, that induced complainants, in 1854, to make their purchase, and that the chief and most valuable

cannel coal deposits embraced in their said purchase are within the interlock.

*Twenty-first*, That at the time of filing their original injunction bill, in May, 1866, there were no mining operations being carried on within the interlock, nor upon any part of the lands of the Virginia Cannel Coal Company, now owned by the Peytona Cannel Coal Company; that in May, 1866, there was no mortgage, nor trust deed on the said lands of the Virginia Cannel Coal Company, but that since the filing of said original bill of injunction, the Peytona Cannel Coal Company has been duly organized as a corporation under the laws of this State, and purchased the aforesaid land, and have been actively engaged for several years past in mining and transporting cannel coal from that portion of their said lands on and near Old House run, and that they have lately made coal openings and entries through their said land containing cannel coal, up and to the boundary line of the said interlock, and that they are now preparing to enter upon the interlock for the purpose of mining and removing coal therefrom.

The prayer of the bill is, that the injunction order granted by Judge Samuels, on the 10th day of May, 1866, may continue and remain in full force, until the ejectment suit aforesaid is finally disposed of, and that the Virginia Cannel Coal Company, the Peytona Cannel Coal Company, H. W. Godwin, resident agent of the said Peytona Cannel Coal Company, and all others acting under and by the direction of said company, be inhibited, restrained and enjoined from cutting timber and mining coal from the said interlock, and from exercising any other acts of ownership, on and over the said interlock, until the said ejectment suit is finally disposed of; that the said Virginia Cannel Coal Company, Peytona Cannel Coal Company, and H. W. Godwin, be made parties defendants to the amended bill, and that they, and all others acting under the Peytona Cannel Coal Company, be enjoined from removing any timber

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

or coal from the interlock until the ejectment suit is disposed of.

The cause was heard upon the 23d day of December, 1875, and the court, in the decree of that day, says:

"Upon mature consideration, the court is of opinion that the rights of the parties to the land in controversy, called the interlock, has been finally and fully adjudicated, settled and determined by the Court of Appeals, in the case between the parties hereto, the record of which case is made an exhibit in this cause. And the court is further of opinion that the injunction in this case ought to be dissolved, and that no sufficient ground has been shown to authorize the filing of the said amended bill. Therefore, it is adjudged, ordered and decreed, that the said injunction heretofore awarded in the cause be, and the same is hereby, dissolved; and the plaintiffs' said motion to file said amended bill is overruled, and the said plaintiffs are not allowed to file the said amended bill.

"And the court now declines to award the writ of *habere facias possessionem* to the defendants against the plaintiffs, or to grant the defendants the affirmative relief prayed for in their answer in the nature of a cross bill, but reserves that matter for future consideration."

*Thomas L. Brown*, for appellants, referred to the following authorities:

*Wiseley v. Findlay*, 3 Rand., 370; *Stuart's heirs v. Coalter*, 4 Rand., 84; Tuck. Com., Book 3, §474; 4 Gratt., 235, 252; 5 Leigh, 192; Code Va. (1860), 581; Code W. Va., 486; 2 Mat. Dig., 524; High. on Inj., §486; Hill on Inj., ch. on trespass; *Anderson v. Harvey's heirs*, 10 Gratt., 386; 2 Daniel's Ch. Pr., 1632; High. on Inj., §253; *Hess v. Winder*, 34 Cal., 270; Hill on Inj., 348, 322; *Brennan v. Gaston*, 17 Cal., 372; 1 Daniel's Ch. Pr., 407; Hill on Inj., 25; Story's Eq. Pl.,

885.; 1 Daniel's Ch. Pr., 418 ; Cooper's Eq. Pl., §333,
334; Code W. Va., 601 ; High. on Inj., §997.

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

*T. L. Brown & T. B. Swann,* for appellants, cited the following additional authorities :

*Hanson v. Gardner,* 7 Ves., 305; *Jerome v. Ross,* 7 Johns. Ch., 332; High. on Inj., 255 and n. 4, 258-9 n. 2, 261 and note, and 472 ; 3 Paige, 213 ; 1 Vern., 244 ; 4 Johns. Ch., 141 ; 2 Rob.·old Pr., 407 ; *Gaines v. Hennen,* 24 How., 553 ; 1 Johns. Ch., 91 ; *Jackson v. Wood,* 3 Wend., 22 ; *Hopkins v. Lee,* 6 Wheat., 109 ; *Holmes v. Trout,* 7 Pet., 206 ; 4 Rand., 76.

*James H. Ferguson, Delafield DuBois* and *Abraham Burlew,* for the appellees, relied upon the following authorities :

*Minturn v. Seymour,* 4 Johns., Ch. 173 ; *Corporation of New York v. Mapes,* 6 Johns., Ch. 46 ; *Waterbury v. Dry Dock et al.,* 54 Barb., 388; *Morgan v. Quackenbosh,* 22 Barb., 92 ; *Wayne v. Hochin,* Dick., 235 ; *Vere v. Glynn,* Dick., 441 ; *Sharp v. Ashton,* 3 Ves. & Bea., 144 ; *Renwick v. Wilson,* 6 Johns., Ch. 84 ; Jube's Eq. Pl., 88 ; *Swift v. Eckford,* 6 Paige (N. Y.) Ch. 22; *Ayers v. Valentine,* 2 Edw. (N. Y.) Ch. 451 ; *Hurd v. Everett,* 1 Paige (N. Y.) Ch. 124 ; Adams' Eq., 113 ; *Stafford v. Hewlett,* 1 Paige (N. Y.) ch. 200 ; *Hawley v. Cramer,* 4 Cow., 717 ; *Barlow v. Scott,* 24 N. Y., 40 ; *Morrell v. Munn,* 38 N. Y., 137 ; *Taylor v. Taylor,* 43 N. Y., 578 ; *Frost v. Myrick,* 1 Barb., 362 ; *Carrow v. Port Henry Iron Co.,* 12 Barb., 27 ; *Livingston v. Painter,* 43 Barb., 270 ; *Cady v. Gale,* 5 W. Va., 505 ; 4 Johns., Ch. 141 ; Story's Eq. Pl., §793 ; 2 Story's Eq., 794-5-6; 1 Story's Eq., §64, 65, 71 ; *Wake v. Conyers,* 2 Cox, 36 ; 4 Rand., 84 *Boyd v. Dowie,* 65 Barb., 237 ; 1 Munf., 117 ; 9 Gratt., 220 ; 18 Gratt., 491 ; 24 How., 233.

*J. H. Brown,* for appellees, referred to the following authorities :

*Rucker v. Howard,* 2 Bibb, 169 ; *Honore v. Colmesnil,*

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

1 J. J. Mar., 508; Story Eq. Pl., 885-6-7, 456, 793; *Thorntons v. Fitzhugh*, 4 Leigh, 218; 2 Tuck. Com., 435; 3 Dall., 116; 12 Pet., 488; 9 How., 390.

*T. L. Brown* and *T. B. Swann*, for appellants, in reply:

Story's Eq. Pl., §398; 4 How., 498; 24 How., 579; 1 Starkie Ev., 270; Story's Eq. Pl., §791 n.; 1 Green. Ev., §528; 1 Starkie Ev., §265; *Smith v. Sherwood*, 4 Conn., 276; *Jackson v. Wood*, 3 Wend., 28; 4 Cowen, 563; 4 Wall., 403; 24 Wall., 579; *Hopkins v. Lee*; 6 Wheat., 109; *Hanson v. Gardner*, 7 Ves., 305; *Jerome v. Ross*, 7 Johns., Ch. 332; Brightly's Dig., 453; 3 Wheat., 131; 2 Story's Eq., 207-8; *Neafie v. Neafie*, 7 Johns., Ch. 1, 2, 3; 1 Vernon, 244 n.; 1 Atk., 571; *Kincheloe v Tracewells*, 11 Gratt., 587; Opinion of Hoffman, Judge, in former suit; 8 W. Va., 406; Code W. Va., 668, §4.

JOHNSON, JUDGE, delivered the opinion of the Court:

From the decree of 23d December, 1875, rendered in this cause, the complainants appealed to this Court. The question to be here decided is, whether the said decree be right? A very important inquiry in this investigation, is whether the matters set up in the bill of injunction have been adjudicated. In the view I take of this case, a very brief answer could be given to the enquiry. But it is due to the parties litigant who have spent so much time and means in their efforts through the courts to have their rights secured to them; it is due to the able counsel who have devoted so much time and labor to the researches they have made to elucidate the complicated questions of law and fact involved in the litigation; it is due to the magnitude of the interests involved in the cause, that I should make a patient investigation of the law and facts in the cause, and give the best reasons I can for the conclusions to which I am led.

Having given in the statement of the case, the substance of the pleadings in the injunction suit, the decree which is appealed from, to see whether the same

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

issues were involved in the chancery suit, decided in 8 West Va., 406, it is necessary to show what were the issues involved in the former suit, which has been finally decided by the Supreme Court of Appeals. The original bill in that cause was filed in the circuit court of Boone county, on the first Monday in May, 1866, and is in substance:

*First,* That in 1851, on the 31st of March, Wm. M. Peyton and wife conveyed, by deed of that date, six thousand one hundred and twenty-three acres of land on Big Coal river, in the county of Boone, to the Virginia Cannel Coal Company.

*Second,* That on the 6th of January, 1857, the said Peyton and wife conveyed to Edwin Mitchell and Jesse E. Peyton, six several tracts of land, adjoining each other, on the waters of Droddy's creek, a branch of Big Coal river, and adjoining the six thousand, one hundred and twenty-three acres conveyed to the Virginia Cannel Coal Company, estimated to contain in all three thousand, four hundred and fifty acres.

*Third,* That on the 7th of October, 1857, Edwin Mitchell and Jesse E. Peyton conveyed this three thonsand, four hundred and fifty acres to the Western Mining and Manufacturing Company, the plaintiff in this suit.

*Fourth,* That the tract of land conveyed as aforesaid to the Virginia Cannel Coal Company, as shown by a survey made in 1860, contained seven thousand, five hundred and ten acres, instead of six thousand, one hundred and twenty-three acres.

*Fifth,* That the sale was by the acre and not a sale *in gross,* at $25 per acre.

*Sixth,* That the same survey shows, that the lands sold as aforesaid, by Peyton and wife, to Peyton and Mitchell, contains one thousand three hundred acres less than the amount sold.

*Seventh,* That the excess in the first deed, and the deficiency in the second deed, was covered by a *simple mistake* in drafting the first deed, by which one thousand three hundred and eighty-seven acres, not intended to

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.
be conveyed, was erroneously embraced in the "ambit" of the deed.

*Eighth,* That this excess was subsequently, *intentionally* and *purposely* embraced in the deed to Mitchell and Peyton, and in their deed to the plaintiffs.

*Ninth,* That all this has caused an interlock of one thousand three hundred acres of land, *which is claimed by both companies.*

*Tenth,* That the Western Mining and Manufacturing Company, took possession of the interlock, under the said purchase, mined and shipped vast quantities of cannel coal therefrom, and *claimed* and *exercised* undisturbed *ownership* over the interlock, from the time of their purchase, down to 1859.

*Eleventh,* That in order to get to the interlock with more ease and expedition, it was necessary to purchase of the Virginia Cannel Coal Company one hundred and twenty-three acres of land, which intervened between the interlock and Coal river. This they did. Upon this one hundred and twenty-three acres, they built houses and mills and other improvements, worth between $40,000 and $50,000.

*Twelfth,* That the Western Mining and Manufacturing Company, regarded themselves *the sole owners of this interlock,* and made there valuable improvements, and united with the Virginia Cannel Coal Company in locking and damming Coal river, with sole reference to that fact.

*Thirteenth,* That in 1860, by articles of arbitration, signed by both companies, all the matters in difference between them, were referred to N. Fitzhugh, W. A. Quarrier, and Charles Hedrick to be finally settled by them; that all the arbitration papers may be read as part of the bill.

The fourth article of the submission, which is one of the arbitration papers referred to in the bill, is as follows:

*Thirteenth—(a)—"Fourth,* That the ejectment suit instituted by the said Virginia Cannel Coal Company, (in the name of Wm. M. Peyton and others,) against the said Western Mining and Manufacturing Company, in the

circuit court of Boone county, shall be regularly' matured.for trial ; and if the said arbitrators shall not make and publish their award, in the time hereinbefore designated, to-wit : on, or before, the 1st day of April, 1860, the trial of said suit shall not be postponed or delayed by reason of anything contained in this agreement ; and to avoid costs, the said Western Mining and Manufacturing Company, agree that they will voluntarily appear at rules and plead in said suit. It is also understood and agreed that, if the said Western Mining and Manufacturing Company shall be advised to institute a suit in equity, against the said Virginia Cannel Coal Company in relation to the premises, the same may be regularly matured for hearing, so as not to be delayed in case this agreement should become void."

The sixth article of said submission is as follows :

*Thirteenth*–(b)–"*Sixth*, That the award of said arbitrators shall be entered up as the judgment of the circuit court of Boone county, in the ejectment suit aforesaid, and as the decree of said court, in the chancery suit, should the said Western Mining and Manufacturing Company institute it, subject in both cases, to the proceedings prescribed in the Code of Virginia, and to the right of either party to show cause against the same, and that a right of appeal on the whole case, law and facts, is expressly reserved in favor of either party, to the Supreme Court of Appeals of Virginia."

*Fourteenth*, That maps or plats of the lands of the companies were, ten years before, published, broadcast over the country, and were in the hands of everybody ; and that said maps clearly marked the boundary line of the two companies, as being the mountain ridge, on the left side of Droddy's creek.

*Fifteenth*, Referred to the injunction cause pending in the same court, between the same companies, and asked that it might be made a part of their bill ; and it was copied in the record.

*Sixteenth*, That it never was contemplated by the par-

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

ties, that is, Peyton and the Virginia Cannel Coal Company, to sell, or purchase lands' across the "divide."

*Seventeenth,* That one of the conditions of the sale was that the abstract of title to the said lands sold to the said company was to be passed upon by B. H. Smith and George W. Summers, and that the lands embraced in the abstract submitted to them, and upon which they passed, does not "touch the land in the interlock, but excludes it."

*Eighteenth,* That it was the intention of Wm. M. Peyton and of the Virginia Cannel Coal Company, that the line south thirty-four degrees, west one thousand and thirty poles, should follow the "divide," and that it was so accepted and received by the said company.

*Nineteenth,* That at the time of the contract of sale, the said Wm. M. Peyton *did not own the land across the "divide."*

*Twentieth,* That it appears that the call and line of one thousand and thirty poles was an erroneous and mistaken call and line, and should be corrected by a court of equity, in order that the original intent of the parties should be carried out, &c.

The prayer of the bill is:

*First,* That the ridge may be established as the dividing line between the two companies.

*Second,* That the Virginia Cannel Coal Company be required to pay the plaintiff the purchase price of the land at $25 per acre, for the excess conveyed to them by Wm. M. Peyton, in his deed for six thousand one hundred and twenty-three acres, with interest.

*Third,* That they be required to pay them the money which they had spent in improving Coal river.

*Fourth,* That they be required to pay for railroad, and for opening and repairing the banks upon the interlock.

*Fifth,* That they be required to pay complainants the money they caused them to expend in necessary mills and houses upon the one hundred and twenty-three acre

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

tract, together with the purchase money for said tract; and be required to accept from complainants a deed for said one hundred and twenty-three acres.

*Sixth,* That proper accounts be directed to be taken between the companies.

The answer denies ever material allegation of the bill upon which relief is prayed.

*First,* It denies that there was any such mistake in Peyton's deed, of March 31, 1851, to the Virginia Cannel Coal Company, as is claimed in the bill, but asserts that the course and distance, south thirty-four degrees, west one thousand and thirty poles, was intentionally inserted in said deed by Peyton.

*Second,* Denies that the sale by Peyton was a sale by the acre, but insist it was a sale *in gross.*

*Third,* Denies that it was the intention of Peyton, at the time of the sale, or conveyance of said land, that the line S. thirty-four degrees, W. one thousand and thirty poles, should follow the "divide" or dividing ridge.

*Fourth,* Denies that the purchasers of the land, or their officers, ever heard of any "divide" or dividing ridge, in connection with said land until after the deed was made.

*Fifth,* Denies the allegation of the bill that Peyton did not own any of the land in the interlock at the time of the sale to the Virginia Cannel Coal Company.

*Sixth,* Admits that by the skill of Wm. M. Peyton, in conveying the same land twice, an interlock was created; but denies that the plaintiff derived any title whatever to the interlock by any of the subsequent conveyances.

Three amended bills were filed by the plaintiff, the first alleges:

*First,* That on the 31st of March, 1851, Wm. M. Peyton, was the owner of all the lands in the "James survey," lying between the dividing ridge of Indian and Droddy's creeks, and the line of the "James survey," extending from the mouth of Joe's creek some 2,000 poles, with the "Banks line" to C, on the map of John L. Cole,

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

that by his deed of conveyance of that date, he conveyed or intented to convey to the Virginia Cannel Coal Company all the lands embraced within these boundaries.

*Second,* That complainants are advised that the Virginia Cannel Coal Company, in order to defeat complainants' just claim to the one thousand two hundred acres of land fully set out in the interlock, claim C to Q on the map of Cole, to be their true line, under the said deed of March 31, 1851, instead of the lines of the "James survey" from E to C, which they have always claimed until lately, and long after the bringing of this suit.

*Third,* That the James line is the true upper line of the deed of 31st March, 1851.

The prayer of this bill is:

"That the court, in adjusting and finally settling and ending all the matters in controversy in this suit, will compel the Virginia Cannel Coal Company and the Peytona Cannel Coal Company, to take and hold their six thousand one hundred and twenty-three acres of land under the deed of 31st March, 1851, from the upper James line aforesaid, and so as to embrace within their boundaries, under said deed, all the lands from B, upon the ridge, to C, in the James line; from C to the James line near L; from a point in the James line, near L, to K; from K to 8, from 8 to 9, from 9 to 10, from 10 to 12, from 12 to 13, from 13, with the ridge, to A, and from A, with the dividing ridge between Indian and and Droddy's creeks to B, upon the ridge as laid down on Cole's map."

The second amended bill was filed for the purpose of making a new party. The third amended bill repeats, in substance, the matters contained in the original bill, and alleges in addition:

*First,* That the purchase of the tract of land afterwards conveyed by William M. Peyton to the Virginia Cannel Coal Company, was made in 1850.

*Second,* That a survey thereof was made at the instance of William M. Peyton, by William M. Smoot, for

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

the purpose of laying off to said company six thousand acres, the exact quantity sold, and that Smoot reported the survey as containing six thousand one hundred and twenty-three acres.

*Third,* That the survey was made in 1850, and shows that the line was run with, and along the dividing ridge, and not by the straight line, south thirty-four degrees west, one thousand and thirty poles.

The prayer of this bill is:

*First,* That the court will require the Peytona Cannel Coal Company, which company, as the successor of the Virginia Cannel Coal Company, had become the owner of the lands in question, to pay the plaintiffs for the excess of the lands embraced in the deed of 31st March, 1851, to the Virginia Cannel Coal Company, at $25 per acre.

*Second,* That the Peytona Cannel Coal Company be required to convey to the plaintiff, one thousand three hundred and eighty-seven acres of land, the excess embraced in the deed aforesaid.

*Third,* That taking into consideration the *equity of the case,* the Peytona Cannel Coal Company be required to convey to the plaintiffs, the land known as the interlock in part payment of the excess, and for the residue of said excess about six hundred acres, that said company pay to the plaintiffs $25 per acre.

The answer to the bill :

*First,* Admits that Smoot made a survey for Peyton in 1850; but denies that such survey in any way affects the rights of the parties to the suit.

*Second,* Denies that said survey was made by Smoot for the purpose of laying off the land sold to the Virginia Cannel Coal Company, by Wm. M. Peyton; refers to the other answers of defendant, as part of the answers to the amended bill, and denies the material allegations of said bill.

After the circuit court of Boone county had rendered a decree in the cause deciding, " that the course and line

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

south thirty-four degrees west, one thousand and thirty poles, contained in the deed from Wm. M. Peyton and wife, to the Virginia Cannel Coal Company, dated 31st March, 1851, is the true course and line, contemplated and intended by the parties to the said deed, at the time of the execution and delivery thereof, and there is therefore no mistake therein," the plaintiff filed a supplemental bill, in which they proceed to state the material facts contained in their former bills, and alleged the following new matters :

*First,* That since said decree was rendered, they have discovered new and important evidence, bearing upon the questions decided by said decree.

*Second,* That this new evidence consists of the original maps and notes of the survey made by Smoot, in 1850.

*Third,* That it was from this map, and these notes of Smoot, that the deed of Peyton to the Virginia Cannel Coal Company of the 31st March, 1851 was written.

*Fourth,* That these notes of survey and plat show that the course and line south thirty-four degrees west one thousand and thirty poles were not to run as now contended for by the defendants, and as set forth by the decree aforesaid, but on the contrary, the said course and line, was so to run, as to follow the main line of the divide between the waters of Droddy's creek and Indian creek.

*Fifth,* That since said decree was rendered, the plaintiffs had come into possession of letters, which they file as exhibits, of the agents of the Virginia Cannel Coal Company, admitting *unequivocally that the interlock was the property of the Western Mining and Manufacturing Company.*

*Sixth,* That it was error to decide what was the true line between the companies, without deciding the question of compensation.

The bill prays for a hearing in respect to the new

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

matters, and for a re-hearing upon their original and amended bills, and for general relief.

The allegations of this bill were denied by defendants.

The plaintiffs also filed a bill of review, in which they restate all the material allegations in their former bills, amended bills and supplemental bill; and reassert among other things that, at the time of the sale, and conveyance of Wm. M. Peyton to the Virginia Cannel Coal Company, he, the said Peyton, *did not own the lands within the interlock; and that the plaintiffs had since 1854, up to 1871, the time their bill of review was filed, possession of the interlock, and exercised continuous acts of ownership over the same.*

They allege newly discovered evidence since the decree was rendered in the cause, among which was the original opinion of Smith and Summers, and the original abstract of title to the land, made by James Hendrick, with A. W. Quarrier's certificate attached thereto; and they allege that this evidence, shows:

That *no part of the land now designated the interlock,* constituted any part of the six thousand acres purchased by the Virginia Cannel Coal Company of Wm. M. Peyton.

That the abstract of title prepared by Hendrick, describes particularly and accurately each and all the several tracts constituting the land sold by Wm. M. Peyton to the Virginia Cannel Coal Company, and that not one acre of the said interlock is included in the land described in said abstract.

The prayer of the bill is:

"That the cause may be heard on the new matter,' and reheard upon the former bills, and for such relief as was prayed for in the original bill, the amended and supplemental bill, and the cross bill of Wm. M. Peyton.

Among other things, the cross bill of Wm. M. Peyton alleges:

*First,* That the lands sold by Wm. M. Peyton to the Virginia Cannel Coal Company, lie almost entirely on

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.
the south side of Big Coal river, and are drained by the waters of Indian creek and Old House branch.

*Second,* That *subsequent to the sale and conveyance* of the said land to the Virginia Cannel Coal Company, he, Peyton, purchased and acquired other lands, drained by the waters of Droddy's creek, and sold and conveyed the same to Edwin Mitchell and Jesse E. Peyton, of Philadelphia, who subsequently sold and conveyed the same to the Western Mining and Manufacturing Company.

*Third,* That at the date of the sale and conveyance of the six thousand, one hundred and twenty-three acres to the Virginia Canal Coal Company, he, said Peyton, *did not own the lands sold by him to Mitchell and Peyton.*

*Fourth,* That prior to the conveyance of the said six thousand, one hundred and twenty-three acres to the Virginia Cannel Coal Company, he employed James Hendrick, an able attorney of Kanawha county, to investigate and give his written opinion of the title of him, the said Peyton, to the said six thousand, one hundred and twenty-three acres; and that after a thorough examination thereof, said Hendrick furnished him an elaborate opinion thereof, which he files as part of his bill.

*Fifth,* That the land, the title to which was so examined by said Hendrick, was situated on Coal river, east of the dividing ridge between Droddy's creek and Indian creek, and that no part of the six several tracts sold to Mitchell and Peyton was included in that opinion.

*Sixth,* That the question of the title of Peyton to the said six thousand one hundred and twenty-three acres of land was also referred to B. H. Smith and George W. Summers, who pronounced it good and valid; that the legal opinions of Hendrick, Smith and Summers was satisfactory to the purchasers, and that they *did not embrace any part of the six several tracts of land aforesaid, and that the said opinions were given prior to the purchase thereof by Peyton.*

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

*Seventh,* That the Western Mining and Manufacturing Company exercised exclusive control of the said six tracts of land from 1854 to 1865; that during that period said company exercised all the rights of exclusive ownership over the said land.

*Eighth,* That the Virginia Cannel Coal Company, its agents and employees, did not claim of the Western Mining and Manufacturing Company any of the lands embraced in the deed to said company, as drafted on Map No. three, until 1860.

*Ninth,* That it was his (Peyton's) intention in the deed of March 31, 1851, to make the boundary of the Virginia Cannel Coal Company the line of the dividing ridge between Indian creek and Droddy's creek, and that it was, and is the custom in Boone county, *to sell and convey by dividing ridges, commonly called " divides."*

*Tenth,* That the words, "following the divide," after the call " one thousand and thirty poles," were accidentally omitted in the original deed of March 31, 1851, and that the insertion of the words " following the divide " are necessary to carry into effect the original intention of said Peyton, in his conveyance of the six thousand one hundred and twenty-three acres of land to the Virginia Cannel Coal Company.

*Eleventh,* That all the acts and doings, claims and demands, *set up by the Virginia Cannel Coal Company to any part of the lands conveyed to the Western Mining and Manufacturing Company, are contrary to equity.*

The prayer of the cross-bill is:

That the deed of the 31st of March, 1851, executed by Wm. M. Peyton to the Virginia Cannel Coal Company, may be corrected, by the insertion of the words " following the divide " after the call therein for " one thousand and thirty poles," in order thereby that the original intention of the contracting parties may be carried into effect; that the Virginia Cannel Coal Company may have and receive only the number of acres purchased and paid for, and intended to be conveyed to

35

said company, to-wit: six thousand one hundred and twenty-three; *and that the Western Mining and Manufacturing Company may have and receive all of the said six several tracts of land purchased and paid for by it.*

The answer to this cross-bill denies:

*First,* That there was any mistake in the calls of Peyton's deed to the Virginia Cannel Coal Company of the 31st March, 1851, or that the words "following the divide" were accidentally omitted therefrom.

*Second,* It denies that it was the intention of Peyton, when he made the deed, to insert therein, after the call, "one thousand and thirty poles," the words "following the divide," or that it was his intention to make the dividing ridge the line of the six thousand one hundred and twenty-three acres of land.

*Third,* It denies the allegation in said bill that " Peyton did not own the land within the interlock at the time he made the deed to the Virginia Cannel Coal Company," and, on the contrary, it avers that said Peyton, in order to perfect his title to the lands within the interlock, purchased from Rachel Williams and Benjamin Burnside, two of the three tracts of land which form the interlock, and that said land was conveyed to him, by them, on the 22d day of March, 1851.

*Fourth,* It denies that either Mitchell or Jesse E. Peyton, or the Western Mining and Manufacturing Company, derived any title to the land within the interlock by the conveyances named in the bill.

*Fifth,* It denies that the Western Mining and Manufacturing Company exercised exclusive control over the whole of the said six tracts of land from the date of its organization until 1865.

*Sixth,* It denies that the Virginia Cannel Coal Company, its agents and employes, did not claim the lands in controversy until 1860; but avers that the Virginia Cannel Coal Company claimed all the lands embraced within the calls of their deed, from the date of its execution, in 1851, thenceforward.

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

On the 14th day of May, 1872, the causes, the original suit, and the cross-bill of Wm. M. Peyton, being matured for hearing in the circuit court of Kanawha county, to which it had been removed, were heard together, by consent of all the parties, "upon the original and amended bills, the amended supplemental bills, and the amended supplemental bill in the nature of a bill of review, respectively; and on the respective answers thereto, and respective replications to said answers, and upon the several orders and decrees made therein, respectively; and upon all the papers filed in the causes; and upon the depositions of witnesses filed therein, respectively; and upon the decree of the 8th of November, 1867, which last-named decree was the one sought to be reviewed and reversed. And being argued by counsel on both sides, upon mature consideration the Court is of opinion that there is no error in the said decree of the 8th November, 1867, nor cause shown for reversing the same.

" It is therefore adjudged, ordered and decreed, that the said bill, in the nature of a bill of review, be, and the same is hereby, dismissed.

"And after full hearing on the merits of the cases aforesaid, and mature consideration of the same, and all the matters arising therein, the court is of the opinion that the complainants are not entitled to the relief prayed for.

"It is therefore adjudged, ordered and decreed that the complainant's bill, and amended bills, and amended supplemental bill, and the cross-bill of William M. Peyton, be and the same are hereby dismissed. And it is further adjudged, ordered and decreed, that the complainants pay to the defendants, the Virginia Cannel Coal Company, their costs in this behalf expended, including $30 attorney's fee as allowed by law."

From this decree the complainants appealed, and the decree was by the Supreme Court of Appeals, at the January term, 1875, affirmed, 8 W. Va., 406.

The question now is, whether the matters adjudicated

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

in the former suit, is an adjudication of the matters set up in the injunction suit?

It is insisted for the plaintiffs that so much of the former bill and answer must be set forth as is necessary to show that the same points were then in issue. Story Eq. Pl., sec. 791. This is true, and if it does not appear, from the pleadings in the cause, that the same points were in issue, in the present cause, as were in the former, the former decree cannot be relied upon as an estoppel to the claim in the present suit. It is also claimed that the decree must be direct upon the *precise point*, and if the matters pleaded, as an estoppel, only came before the court *collaterally* in the former suit, that they cannot have the effect of an estoppel in the latter. This proposition is also true. 1 Grenl. on Ev., §528; 1 Starkie on Ev., 265; *Smith v. Sherwood*, 4 Conn. 276; *Hopkins v. Lee*, 6 Wheat. 109.

If the matters relied upon by the plaintiffs, in the injunction suit, did not come directly and not collaterally before the court in the former suit, and if they were not adjudicated in said suit, the plaintiffs here are not concluded by the former adjudication. But it does not seem to be denied by the counsel for the plaintiffs that if a matter has been adjudicated by a court of competent jurisdiction, that such adjudication forever closes controversy as to that matter between the same parties.

Mr. Justice Livingston, in *Hopkins v. Lee*, 6 Wheat., 109, said: "It is not denied, as a general rule, that a fact which has been directly tried and decided by a court of competent jurisdiction, cannot be contested again between the same parties in the same or any other court. Hence a verdict and judgment of a court of record, or a decree in chancery, although not binding on strangers, puts an end to all further controversy concerning the points thus decided between the parties to such suit. In this there is and ought to be no difference between a verdict and judgment in a court of common law, and a decree of a court of equity. They both stand on the

same footing, and may be offered in evidence under the same limitations, and it would be difficult to assign a reason why it should be otherwise. The rule has found its way into every system of jurisprudence, not only from its obvious fitness and propriety, but because without it an end could never be put to litigation."

In *Simpson v. Hart*, 1 John. ch. R. 99, Chancellor Kent said, " The principle that a matter once considered and decided by a competent power, shall not be reviewed by any other tribunal, having concurrent power, except in the regular course of error, or appeal, does not rest upon the mere technical form of the decision. That would be too narrow a ground ; decisions in the case of new trials do not appear upon record, and they are also decisions resting in sound discretion. It is the unfitness and vexation and indecorum of permitting a party to go on successively by way of experiment from one concurrent tribunal to another, and thus to introduce conflicting decisions, that prevents the second inquiry."

See *Coit v. Tracy*, 8 Conn., 268; *Thompson and others v. Roberts and others*, 24 How., 233.

The whole record in the former suit is appealed to, and made part of the defense in the injunction suit; and is treated as a part thereof, by the plaintiffs, as well as the defendants; but it is insisted by the plaintiffs, that the precise matters in controversy in the former suit are not in issue in the present one. The record shows that at least three suits were pending at different times between the parties, with reference to the interlock. One commenced in 1860, in ejectment, by the Virginia Cannel Coal Company against the Western Mining and Manufacturing Company, to recover the interlock ; then the chancery suit, instituted at May rules, 1866, which was finally decided in 1872, and the decree affirmed on appeal in 1875; and then the injunction suit, in which an order of injunction was granted on the 10th day of May, 1866. The injunction has been dissolved and the decree of dissolution appealed

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.
from, and is now before this Court. The ejectment suit is still pending. The plaintiffs insist that when the arbitration was abandoned, the several suits were separated, and prosecuted separately, and that consequently there must be separate judgments in each of the suits respecting the interlock, before all the questions of law and equity can be finally determined between the parties.

This depends altogether upon the question whether the same matters, substantially, are, or were, in dispute between the parties in the said several suits ; if they were, the settlement of these matters in one suit, either in law or in chancery, is an adjudication between the parties, that cannot be enquired into in any other suit.

Suppose the ejectment suit brought by the Virginia Cannel Coal Company had been tried in 1860, and had been decided in favor of defendants, would not the plaintiffs, who were defendants in that suit, have insisted in a chancery or law suit afterwards brought by the same parties for the interlock, that the question of title under William M. Peyton, to the interlock, had been finally determined in that suit? Suppose the plaintiffs had recovered, then, according to the principles laid down in *Barrows v. Kindred*, 4 Wall., 403, would not the plaintiffs' title have been *established* to the interlock, and could the defendants have ever afterwards called it in question, except upon writ of error ? If, in the chancery suit, the same questions were decided as were pending in the ejectment suit, then the same result would follow, and the right to the interlock finally adjudicated. But the plaintiffs insist that it was error in the court to dissolve the injunction and render a decree that the right of property and right of possession, claimed by the Western Mining and Manufacturing Company, and their successors, the Philadelphia Cannel Coal Company, to the said interlock, had been fully and finally adjudicated, settled and determined by the Supreme Court of Appeals in a *chancery* suit, instituted, as they alleged, to correct certain mistakes in the boundaries of the deed made on

1877.
January Term.

Western M. &
M. Co. et al.
v.
Virginia Cannel
Coal Co. et al.

the 31st of March, 1851, by William M. Peyton to the Virginia Cannel Coal Company, insisting that it is not the province of a court of *chancery* to hear and determine the legal rights of adverse claimants to a tract of land. If the court of chancery did so, and, upon appeal, its decree was affirmed, the question of jurisdiction has been settled by the Court of last resort in this State, and as to this case, could not be inquired into. *Newman v. Mollohan,* decided at this term of the court. But it is clear that the chancery court did not take jurisdiction of a naked legal question respecting the interlock. It cannot be doubted that the correction of a mistake in a deed is a proper matter for chancery jurisdiction, and I don't think there is any question better settled than where a court of chancery has jurisdiction for one purpose, it will not send the parties back to a court of law, but will retain the jurisdiction for all purposes, and do complete justice between the parties. *Havly v. Cramer,* 4 Cow., N. Y., 717; *Chinn v. Heale,* 1 Munf., 63; *Chichester, executrix, v. Vass, adm'r,* 1 Munf., 98; *Morrell v. Munn,* 38 N. Y., 137; *Taylor v. Merchants' Fire Ins. Co.,* 9 How., 390; *Taylor v. Taylor,* 43 N. Y., 578; *Stuart's heirs v. Coalter,* 4 Rand., 74; *Cady v. Gale,* 5 W. Va., 566. If then, the question of ownership and right to the possession of the interlock were in issue and decided by the court in the previous case, they were properly within the jurisdiction of a court of chancery, and the decision of them is a finality. What were the principal issues in the former chancery cause?

They were:

*First,* Was there a mistake in that part of Peyton's deed to the Virginia Cannel Coal Company of the 31st March, 1851, which called for, south thirty-four degrees, west, one thousand and thirty poles?

*Second,* Was the said call, south thirty-four degrees, west, one thousand and thirty poles, the true course and line of the boundary of the lands sold, and intended to be sold and conveyed by Peyton to said company?

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

*Third,* Were the words " following the divide," after the call south thirty-four degrees west, one thousand and thirty poles, accidentally left out of said deed by said Peyton, when he executed the same ?

*Fourth,* Was it the intention of Wm. M. Peyton, when he sold and conveyed said land to said company, to make the dividing ridge between Indian creek and Droddy's creek, the boundary line thereof, instead of the straight line, south thirty-four degrees west, one thousand and thirty poles, and was that intention defeated by the accidental omission from said deed of the words "following the divide," after the call for said straight line ?

*Fifth, Did Peyton own the land within the interlock* at the date of his sale and conveyance of the six thousand one hundred and twenty-three acres to the Virginia Cannel Coal Company, and was he, at the date of said deed, in a condition to make a title of said interlock to said company ?

*Sixth,* Did Peyton purchase the whole of said six tracts of land sold by him to Mitchell and Jesse E. Peyton, subsequently to his sale and deed to the Virginia Cannel Coal Company?

*Seventh,* Did the title to the interlock pass to said Mitchell and Jesse E. Peyton, by the deed from Wm. M. Peyton ; and from said Mitchell and Peyton, by their deed to the Western Mining and Manufacturing Company ; or did the title to said interlock pass to the Virginia Cannel Coal Company, by the deed from Wm. M. Peyton of the 31st March, 1851?

*Eighth,* Who were the owners of the said interlock ?

*Ninth,* Did the Western Mining and Manufacturing Company have the undisturbed possession of said interlock from the year 1854 thenceforward ?

The circuit court of Kanawha county upon a full hearing on all these, and other questions in the cause, dismissed all the bills of complaint.

Upon appeal from this decree the Supreme Court of

Appeals did not content itself, with merely affirming the decree of the court below, but distinctly, decided :

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

What are the true boundaries of the deed from Peyton to the Virginia Cannel Coal Company of 31st of March, 1851.

. That Peyton owned all the lands within the interlock, except the Tetham Snodgrass' land at the date of his deed to the Virginia Cannel Coal Company.

That there was no such mistake in the calls of Peyton's deed, to the Virginia Cannel Coal Company, as claimed by the plaintiffs, and that the line, south thirty-four degrees west one thousand and thirty poles, was the true course and line, as intended by Peyton when he made the deed.

That by Peyton's deed of 31st March, 1851, the legal title to the whole of the interlock, except the Snodgrass land, passed to the Virginia Cannel Coal Company.

That there was nothing in the pretensions of the plaintiffs, that they had *possession* of the interlock which was acquiesced in by the defendants. That the complainants were not entitled to compensation.

Judge Hoffman said in his opinion, which was concurred in by the other Judges: " There was no error in the decree dismissing the bills, and it is therefore affirmed with damages and costs, but the decree will not prejudice the legal title of either of the plaintiffs to any land without the true boundary of the deed from Peyton to the Virginia Cannel Coal Company, or the land within such boundary, not owned by Peyton at the time of the execution of the deed, but afterwards granted by Snodgrass to him, and by him to Mitchell and Jesse E. Peyton, and by them to the Western Mining and Manufacturing Company."

The necessary import of this language is that the decree will and does prejudice the legal title of the plaintiff to all the land in the interlock, except the Snodgrass land. The Court decides that the Virginia Cannel Coal Company by said deed of 31st of March, 1851, became

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

the legal owner of all the land within the interlock, except the Snodgrass land. It was a controversy between the original coal companies, and afterwards between them and their successors, as to who owned and was entitled to the use and enjoyment of the land known as the interlock. This controversy commenced in 1859, about eight years after the purchase by the Virginia Cannel Coal Company, and about five years after the purchase by the Western Mining and Manufacturing Company, they were anxious to settle the whole controversy. In January, 1860, they entered into a submission to arbitrators; at that time the ejectment suit had just been brought, and the chancery suit on the other side threatened; and by the fourth article in their submission, they were careful not to take away their right on the one side to press the ejectment suit in the court, in case the arbitrators did not return their award within a certain time specified, and the other side were in the same article equally careful to preserve their right to bring a chancery suit to settle the dispute, if they were advised so to do. And the sixth article provided that the award should be entered up as the judgment of the court in the ejectment suit, and as the decree of the court in the chancery suit should one be instituted. The matter of the arbitration was delayed, and the war come on, and nothing more was done until May rules, 1866, when the bill in the chancery suit was filed. On the 10th of the same month, the injunction was granted. The injunction bill seems to have been prepared first; one of its allegations is, "and the survey aforesaid further shows that the aforesaid excess in the one deed, and the deficiency in the other deed, was caused by the said Wm. M. Peyton having conveyed parts of this land to both of these companies, causing an interlock, which is *now a subject of mutual claim and dispute.* To correct which, proceedings were instituted prior to 1861, on the law side, and provision made in the arbitration agreement for instituting the same on the equity side of your

honor's court, and the question afterwards submitted to arbitration, by written agreement of both the companies, herewith filed marked E. During the late rebellion the papers of these causes on the law side were lost. Your complainant is preparing again to institute proceedings on the equity side of your honor's court against the Virginia Cannel Coal Company, as provided for in said arbitration bond *to bring the conflicting interests of the two companies within the interlock to a final adjustment."* That is just what they did, and the conflicting interests of the two companies and their successors in the property within the interlock were brought to a final adjustment. The bill of injunction further alleges that, "complainants will complain and hope to be able to show that the call in the deed from Wm. M. Peyton and wife to the Virginia Cannel Coal Company, *which make the interlock, were mistaken calls, and that the land within the interlock properly passed under the deed from Wm. M. Peyton and wife to Jesse E. Peyton and Edwin Mitchell."* The prayer of the bill is, "that the court will restrain, inhibit and enjoin the said Virginia Cannel Coal Company, Clem. Smith, their agent and all others from cutting, removing and carrying away timber from the land within the interlock aforesaid, until the further order of the court, and until the rights of the companies are properly adjudicated." It is evident from the frame of the bill, that its only object was to prevent any timber being cut and removed from the interlock until the rights of the company thereto could be properly adjudicated. That the Western Mining and Manufacturing Company were not willing to go before a jury, as the deed was on the naked question of legal title to the interlock, and that therefore they would appeal to a court of equity which by reason of the alleged mistake in the deed, had jurisdiction of the cause, and that in that suit they would have the whole controversy as to the rights of the companies, to the interlock, there finally settled and determined. The bill in the chancery cause, refers to the

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

proceedings in the injunction suit and asks that the injunction suit may be made a part of their bill. We have set out the material part of the pleadings in the injunction cause ; and from an inspection of them it clearly appears, that every point, in that cause, and more is included in the chancery cause, which has been decided in the Supreme Court of Appeals, and therefore, all the matters in the injunction suit, have been fully adjudicated, settled and determined in the said chancery cause ; and that for that reason alone, the injunction was properly dissolved.

It is claimed that, the same points were not in issue in the chancery suit as in the injunction suit, and *Gaines v. Hennen,* 24 How., 553, is relied upon to show it. That case was very different from this. Mr. Justice Wayne, who delivered the opinion of the majority of the court, held, that the case in 12 Howard, did not conclude the parties to the latter suit, and upon that point said : "We will now show the difference as to the character in which Mrs. Gaines then sued, and that in which she now sues in connection with the law of Louisiana as to what constitutes a *res judicata* and what does not. In the first, her demand was for one-half, and four-fifths of another half of the property owned by her father when he died. She *then* claimed, as donee of her mother to one-half, and as forced heir of her father, to four-fifths of another half of his estate. Now, she claims as universal legatee, and legitimate child of her father under his will of the 13th July, 1813, which has been admitted to probate by the supreme court of Louisiana and ordered to be executed as such. The difference between the two cases, is just that which the law of Louisiana will not permit the decision in the first to be pleaded against her in this case as a *res judicata*. It is declared in article 2265 of the Louisiana code, that the authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same ; the demand must be founded on the same cause of action ;

the demand must be made between the same parties, and formed by them against each other in the same quality." It thus appears by the express provision of the Louisiana code, the former suit could not have the effect of a *res judicata*. If there is an outstanding title to the interlock, paramount to the title of William M. Peyton, and that title should be acquired by the plaintiffs and asserted, then we would have an opportunity to apply the principles in 24 How., and 4 Wall. We do not undertake to decide these questions in advance. It will be time enough to consider them when they arise; all we do decide is, that the title to the interlock, as derived through William M. Peyton, and the possession under that title is in the said chancery suit in the 8 W. Va., *res judicata* and concludes the plaintiffs upon the issues made in their injunction suit.

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

It is insisted by the plaintiffs' counsel, that the parties are not the same in the injunction suit as in the chancery suit decided by the Court of Appeals," and that, therefore, the *res judicata* does not apply to the injunction suit. The Western Mining and Manufacturing Company, and its successor, the Philadelphia Cannel Coal Company, were plaintiffs in the chancery suit, and the Virginia Cannel Coal Company, and its successor, the Peytona Cannel Coal Company, were defendants, the successors to each company being made parties after the bill was filed. In the injunction suit, which was instituted about the same time as the chancery suit, the Western Mining and Manufacturing Company was complainant and the Virginia Cannel Coal Company was defendant. It mattered not that other parties were plaintiffs and defendants to either of the suits, as between these two companies and their successors, the matters at issue, common to both suits, have been adjudicated. It would be a very technical rule, indeed, that would restrict the *res judicata* to a cause in which all the parties were precisely the same in both cases. The case of *Thompson et al. v. Roberts et al.*, 24 How., 233,

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*
was a law case, in which a former adjudication in a chancery suit was relied upon as an estoppel, and the parties were not all the same in both cases. Mr. Justice Grier, in delivering the opinion of the court, said: "The objection that the parties were not the same in both suits cannot be sustained. Both parties to this litigation were parties to that suit; the subject matter was the same; the defense now set up was the same, which the pleadings and the evidence show to have been adjudicated in the court of chancery. It is true, Smith, who endorsed the notes to the plaintiffs below, and who was interested in the question, was joined as complainant, and the Pickell Mining Company, who had purchased the mortgaged property, were made respondents, according to the practice in courts of chancery, where all parties having an interest in the question to be tried, are made parties, that the decree may be final as to all matters in litigation.

"No good reason can be given why the parties in this case, who litigated the same question, should not be concluded by the decree, because others having an interest in the question or subject matter were admitted by the practice of a court of chancery to assist on both sides.

"The question between the present parties is *res judicata,* and none the less binding because others are concluded also. A contrary doctrine would sacrifice a wholesome principle of law to a mere technical rule having no foundation in reason; making a distinction where there is no difference." This rule, laid down by the Supreme Court of the United States, is founded on reason and good sense. A contrary doctrine would lead to endless litigation. It is insisted by plaintiff's counsel " that the Virginia Cannel Coal Company, having selected a court of law to pass upon its legal rights, a forum ample and adequate for the remedy, it could not, therefore, seek to enforce the same rights and at the same time in a chancery suit. And this it did not do. It asked for no affirmative relief in the chancery suit. It

1877.
January Term.

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

was satisfied with the forum of its own choice, to-wit: an action of ejectment in a court of law, for determining the conflict of title between the said company in regard to the interlock; and it must patiently abide the issues in the ejectment suit which it has forced upon the Western Mining and Manufacturing Company." It seems that the counsel have overlooked the important fact that the Virginia Cannel Coal Company is defendant in both the chancery suits which were instituted by the Western Mining and Manufacturing Company. After the arbitration was entered into, the ejectment suit does not seem to have been pressed for trial, and the defendants thereto seem now to be the only parties that want it tried. When the chancery suit was instituted, the defendants, the Virginia Cannel Coal Company seem to have made a vigorous defense; it was not necessary for them to ask for any affirmative relief, as the case, as it stood, if decided in their favor on the issues must necessarily settle the controversy about the title to the said companies under Wm. M. Peyton to the interlock.

It will be seen by an inspection of the matters set up in the amended bill, tendered in the injunction suit, that all of said matters were disposed of in the chancery suit, and therefore the plaintiffs were not prejudiced by the refusal of the court to allow said amended bill to be filed, even had the court erred in refusing to all the amended bill to be filled, it did not injure the party tendering it, as it could not affect the merits of the case; and is, therefore, no ground for reversing the decree of the court below. *Kincheloe v. Tracewell,* 11 Gratt. 587.

It is claimed by plaintiffs counsel, that under section twelve of chapter one hundred and twenty-five of the Code of W. Va., the plaintiff may amend his bill at any time after the appearance of the defendant, if substantial justice will be promoted thereby. Who is to decide whether "substantial justice" will be promoted thereby? Certainly the court to whom the amended bill is presented; then he must exercise a discretion, and unless

1877.
January Term,

Western M. &
M. Co. *et al.*
v.
Virginia Cannel
Coal Co. *et al.*

it appears that he exercised that ·discretion to the prejudice of the plaintiff, the appellate court can not say that it was wrongfully exercised. The record discloses no reason why the amended bill was so long delayed. See *Rucker v. Howard*, 2 Bibb, 169; *Honore v. Colmisnel*, 1 J. J. Marsh., 508.

The bill itself did not show that any new matter, that existed prior to the filing of the original bill, had been discovered since. This it should have done to authorize the filing of an amended bill. *Stafford v. Hewlitt*, 1 Paige, 200.

If new matter had arisen since the filing of the original bill, this could only be introduced into the cause by a supplemental bill. *Hurd v. Everett*, 1 Paige, 124. Adams Equity, side page 413.

But the grounds for the interference of the court of equity, set up in the amended bill, are so essentially different from those set up in the original bill, that it makes entirely a new ground for an ihjunction, and amounts in fact to an original bill, and the filing thereof we think was properly refused; and if an application had been made to the court for an injunction thereon, and it had been refused, that action of the court could not be reviewed here. The original bill is fatally defective, it does not aver good title in the plaintiff; it ·asks to restrain a naked trespass, in cutting timber on land without showing that irreparable damage would result therefrom, and there is no allegation of the insolvency of the defendant. This question has been fully discussed and settled in this State in the case of *Ferrill v. McMillan*, 7 W. Va., 223.

As to the affirmative relief prayed for in the answer; this Court will express no opinion. As the Court held over for its future action the prayer, for affirmative relief, and to award a writ of *habere facias possessionem*, and has not disposed of the same, this Court will not consider these matters in advance.

It is insisted that the court erred in dissolving the

injunction as to the Tetham Snodgrass land. We see no error in this action of the court. There is no allegation in the bill that any trespass was committed on the Tetham Snodgrass land; and the defendants yielded all claim to said land, but the bill itself being fatally defective, it is unnecessary to consider this objection further.

For these reasons, I am of opinion there is no error in the said decree of the circuit court of Kanawha county, rendered in this cause on the 23d of December, 1875, and that the said decree should be affirmed with $30 damages and costs.

DECREE AFFIRMED.